STATE OF IOWA, Appellee, v. VINA WALLACK, Appellant.

**CRIMINAL LAW: Evidence—Other Offenses.** Evidence of the intimate relations existing between parties is admissible on the issue whether they were accomplices in the commission of a crime, even though such evidence reveals the fact that said parties were guilty of adultery.

**HOMICIDE: Evidence—Quarrelsome Character of Deceased.** Principle reaffirmed that, in a proper case, evidence is admissible as to the general reputation of the deceased for quarrelsomeness.

**CRIMINAL LAW: Evidence—Private Interview With Witness.** The court has no power to order a witness to submit to a private interview with defendant's counsel.

**CRIMINAL LAW: Evidence—Nonprejudicial Error.** Prejudice may not be predicated on the reception of incompetent evidence to prove a fact which is conceded by both parties to the prosecution.

**HOMICIDE: Accomplices.** Evidence held to sustain a finding that parties were accomplices in a homicide.

*Appeal from Mahaska District Court.*—D. W. HAMILTON, Judge.

MAY 9, 1922.

INDICTMENT charging murder in the first degree. Conviction of murder in the second degree. Defendant appeals.—*Affirmed.*

*David S. David* and *Geo. H. Woodson,* for appellant.

*Ben J. Gibson,* Attorney General, *B. J. Flick,* Assistant Attorney General, *Maxwell A. O'Brien,* County Attorney, and *Hugh B. McCoy,* for appellee.

ARTHUR, J.—Under the rules of practice in this court, it is the duty of counsel, in preparing of brief and argument, to prepare what is designated a "brief," following the errors relied upon for a reversal, and such brief should contain, under a separate heading of each error relied on, separately numbered propositions or points, stated concisely, and without argument or elaboration, together with authorities relied on in support of them. Counsel for appellant have wholly disregarded this rule; and while we do not desire to prejudice the rights of the accused by reason of this neglect on the part of counsel, such rule should not be disregarded.

We call attention to this rule because it is almost impossible, from the argument of appellant's counsel, to pass upon the many propositions urged as error, without needless repetition, and without first classifying the same, as provided by such rule. Without this court's now doing that which should have been done by counsel, we cannot give appellant's case the careful consideration that the gravity of the charge warrants.

We have carefully examined the record and briefs. The errors complained of by appellant may be considered under the following propositions:

I. Appellant complains of admission of certain evidence tending to show improper or adulterous acts by appellant, and also evidence of robbery of deceased; and that such evidence was prejudicial.

1. CRIMINAL LAW: evidence: other offenses.  As a general rule, evidence of other crimes not connected with the crime charged is not admissible; but when the evidence involves circumstances so immediately connected with the alleged commission of the crime charged that it is admissible, it is not rendered inadmissible because it tends to prove another crime. *State v. O'Connell,* 144 Iowa 559; *State v. Hogan,* 145 Iowa 352.

It was proper to show the relations existing between accused and Clair, prior to the alleged crime, where they lived, their previous acquaintance, and other matters complained of, as bearing on the question of whether they were acting as accomplices, and as to whether the defendant was aiding and abetting in the shooting, as accounting for her presence there; and the

mere fact that such evidence might tend to show that the defendant and Clair were guilty of adultery does not render such evidence inadmissible.

Proof of the robbery of deceased was clearly admissible, under Section 4728 of the Code.

II. We have examined the record in regard to the claimed error in the court's refusal to admit testimony relative to the character of deceased. Under the well settled rule, such evidence was clearly admissible. *State v. Hunter*, 118 Iowa 686. However, where such evidence is admissible, it should be confined to general reputation, and proof of bad reputation cannot be established by proof of specific acts. We find, in every instance where the questions propounded were within the rule above announced, that evidence of deceased's bad reputation was admitted, and only in instances where the questions fell clearly outside the rule was the evidence excluded.

2. HOMICIDE: evidence: quarrelsome character of deceased.

Complaint is also made of the ruling of the court excluding certain evidence offered as to what was disclosed by the records of the criminal courts of Cook County, Illinois, such records disclosing that deceased had been convicted of various crimes. Such evidence was not admissible in the form offered, and was properly excluded.

Appellant also complains of the ruling of the court in excluding what was claimed to be part of the conversation of defendant at the time the statement describing the manner in which the crime was committed was prepared. An examination of the record discloses that the testimony of the whole of said transaction was admitted.

It is further contended that evidence tending to show good character of defendant was excluded. We fail to find where such evidence was excluded, but on the other hand, we find an abundance of such evidence offered and received.

It is also an alleged ground of error that defendant was not permitted to testify as to her feelings towards deceased. The objections went, however, to the form of the question, and when the proper questions were propounded, the record discloses that the witness was permitted to go into this subject in

great detail, and even went beyond what a strict adherence to the rules of evidence would have justified.

III.   The two sons of defendant were called by the State. It appears that they had been with one of the relatives of deceased from the time of the crime until the trial.   They were examined and cross-examined, and it can be inferred that their testimony was of a very damaging character to the defendant.   A motion was made by counsel for defendant for an order requiring such witnesses to submit to a private interview with defendant's counsel, and the refusal to sustain such motion is alleged as error.   Counsel cite no authority in support of their claim, nor do we believe such authority can be found.   The court had no right, power, or authority to make such an order.   He had no control over such witnesses, aside from their examination as witnesses in the regular manner and under the rules governing their examination as such.   It was beyond the power of the court to require such witnesses to submit to any examination except in open court, and the overruling of such motion was proper, and not error.

*3. CRIMINAL LAW: evidence: private interview with witness.*

IV.   Counsel for defendant, in argument, complain of error in permitting Stella Hayes, a witness called by the State, to testify to certain declarations made by Charles Clair.   No assignment of error was based on the admission of this testimony, but counsel have argued the point, and we will notice it.

*4. CRIMINAL LAW: evidence: non-prejudicial error.*

Stella Hayes testified:

"I lived at Cricket.   I know Vina Wallack.   I have known Charlie Clair since 1914.   I was at Cricket the night Charlie Clair shot and killed Mason Wallack.   I stayed in my house after I heard two shots.   Charlie Clair came down to our house, after that, alone,—about five minutes afterwards.   When I first seen him coming, I blew out the lights, and sat down to look under the blinds, to see if he was coming.   I went to the kitchen, and asked him to come in.   He stood by the side of the door, and said: 'William, you and Stella come up to our house; Vina killed that son of a bitch.'   We said that we wouldn't go, and he said to come on; that he wanted my husband to come.   He

said: 'If you have anything to say, say it; and if anyone asks you any questions, tell them that we have had two beds.' "

There seems to have been no objection made to the question. But counsel moved to strike the testimony as "incompetent, irrelevant, prejudicial, and applies to the guilt of another defendant, and not to this defendant, and to the charge made against her in the indictment."

The particular ground of the motion is not clear, and we go to the argument of counsel to ascertain the real character of the objection made, or rather, the ground of the motion. In their argument, counsel say:

"It was error to permit the State's witness, Stella Hayes, to testify as to what Charles Clair said, to the effect that 'Vina killed the son of a bitch,' and, 'Tell them that we had two beds.' It was prejudicial, as independent testimony of another crime, to wit, 'adultery.' "

We think it was not error to refuse to strike the testimony. It was not prejudicial error, under the record. The record is full of testimony received without objection that Clair and Mrs. Wallack were living together without being married. Defendant's testimony, as well as the State's, shows this state of affairs. We do not understand that the statement in Stella Hayes's testimony that "Vina killed the son of a bitch" is specifically complained of. All through the record it is conceded that the defendant did not fire the shots which killed Wallack, although she had said that she did, doubtless in pursuance of an agreement between her and Clair that she would assume the blame of the killing, in an endeavor to exonerate Clair.

In another assignment, it is said:

"The court erred in permitting the witnesses Harriet Fitzgibbons and Josephine Lawrence to testify to conversations of Mason Wallack, not in the presence of defendant. These witnesses testified that they had conversations with Mason Wallack in Chicago, prior to his coming out to Cricket, Iowa, about Vina Wallack and the children, Ned and James Wallack, without relating anything that was said by the witness or by Wallack, and said, in substance, that in such conversations Wallack never made any threats against either his wife or his children. Ob-

jection interposed was that such testimony was 'not rebuttal, and is not a matter of impeachment.' ''

We have carefully examined the record with reference to such testimony, and conclude that the admission was not error.

V. We find that the court fully and fairly covered the defense of self-defense in his instructions to the jury, and while we do not find any definite exception thereto, we have examined the instructions given, and find no error therein.

VI. The appellant in argument has devoted considerable space to the misconduct of counsel for the State in both opening and closing arguments. We have examined the statements complained of. The rule is well settled that counsel should only discuss the evidence and reasonable deductions and inferences to be drawn therefrom. In *State v. Hasty*, 121 Iowa 507, 520, we said:

''On such occasions, hyperbolical expressions have been indulged in always, and probably always will be. * * * It would be undertaking too much to vindicate all expressions of opinion made in the heat of argument, and this is not essential, in order to sustain a conviction. If not calculated to unduly arouse the passions or to divert the jury from the proper discharge of their duty, the verdict should not be disturbed.''

We cannot say that there was, in fact, anything in the argument complained of, to divert the jury from a proper discharge of its duty. We think the statements complained of may be said to have been based on evidence, or upon facts and circumstances fairly deducible from the evidence. In view of the whole record, we do not deem the argument prejudicial.

VII. The points relied upon for reversal, to wit, that there is no evidence that the accused was an accessory, and that there is not sufficient evidence to sustain the verdict, have required an exhaustive examination of the whole record. 5. HOMICIDE: accomplices. If this examination had been confined to appellant's abstract alone, we might be inclined to adopt the view of counsel for defendant. However, an examination of the whole record discloses: That the defendant and one Clair were living together in the town of Cricket. Defendant was the divorced wife of deceased. She was the mother of three children by de-

ceased, two of whom were with her and Clair at the time of the shooting. Mason Wallack came to Cricket and to the Clair home for the avowed purpose of securing his children. There is some evidence of previous trouble between Wallack and defendant, and of threats by him, which were communicated to the defendant. There is also some evidence that defendant feared Wallack, and that, when he came to the house, she and the children went to the neighbors, and asked for a gun. This fact alone, and her own statement on the witness stand, however, constitute about all the evidence that would indicate that she acted in fear. There is some evidence also that she and Clair had, at some prior time, talked of killing Wallack, and then claiming that they thought he was a burglar.

It cannot be contended, under this record, that the character of either Clair, defendant, or Wallack was anything but bad; but the bad character of the defendant cannot, of itself, be a ground for conviction, any more than should the bad character of Wallack justify his killing.

It further appears that defendant, after the first visit of Wallack, returned to her home, and took then the first step that afterwards contributed to the crime. She at least assisted in loading the shotgun. In the evening, before the return of Clair and Wallack, defendant not only pulled down the blinds at the windows, but also placed papers over the windows; and it appears that this was not the custom in the home. No explanation of this act is made by defendant, and we do not care to invade the province of the jury as to what inference might be drawn therefrom. Clair and Wallack returned to the Clair home. They had been drinking. The two boys and Mrs. Wallack were there. An altercation arose. The lamp was removed from the table out of the way by defendant, and Wallack was killed. Immediately after the shooting, the body was robbed, and Wallack's money taken; and in this part of the crime at least, Mrs. Wallack participated. Immediately after that came the plan by both to evade the punishment by a plea of self-defense, and an admission by Mrs. Wallack that she herself fired the shots,—a plan that might well have been found not to have originated under the excitement then existing, but one

which might have been preconceived by them, to meet just such an occasion as there existed. We have not overlooked the conduct of the parties immediately following the arrival of the officers 'and others, nor the conflicting statements of defendant. We also note in the testimony of James Wallack the following:

"I saw the shotgun there that night before father was killed, that Clair brought out of the bedroom. He said to my father that my mother had it already loaded to shoot him with."

It does not appear in the record where Clair obtained this knowledge, but it does appear that defendant had loaded the gun; and the jury would not have been unwarranted in finding from this evidence a premeditated plan by Clair and defendant that terminated in the killing and robbing of deceased. Continuing with the testimony:

"My father continued to talk with Ned after that. Mother moved the lamp from the table where my father was sitting, a little before the shooting. After she moved it, she sat down in the chair, and motioned to Charley Clair to get the gun. She pointed as though with a gun to my father, after she motioned with Clair."

We have examined the record carefully, to determine whether or not it affords answer to appellant's assignments that there is no evidence that defendant was an accomplice, and that the evidence is not sufficient to support the verdict. We conclude that the evidence was sufficient to show defendant an accessory before the fact, and that she aided in the commission of the crime. Supporting, see *State v. Gray,* 116 Iowa 231; *State v. Penney,* 113 Iowa 691. Considering the evidence in the instant case in the light of the record and of our holdings in the above cited cases, we think the evidence amply sufficient to support the finding that defendant participated in the murder committed, and sufficient to support the verdict.

Again referring to the complaint of appellant relative to misconduct of counsel for the State in their argument, in view of the facts disclosed in this record, it becomes more apparent that we cannot say that the jury was influenced by the argument, and the defendant prejudiced thereby. The jury might

well have disregarded all argument, and reached the same finding from the evidence in the case. Under such record, the argument cannot be deemed prejudicial.

We have gone carefully through this record, and our conclusion is that the defendant had a fair trial, and that the verdict is fully sustained by the testimony. The judgment of the trial court is affirmed.—*Affirmed.*

STEVENS, C. J., EVANS and FAVILLE, JJ., concur.