376 So.2d 1343 (1979)
Chester Jordan JOHNSTON, Jr.
v.
STATE of Mississippi.
No. 51448.
Supreme Court of Mississippi.
November 14, 1979.
Rehearing Denied December 12, 1979.
*1344 Nobles & Ferguson, James W. Nobles, Jr., Jackson, for appellant.
A.F. Summer, Atty. Gen. by Robert D. Findley, Spec. Asst. Atty. Gen., Jackson, for appellee.
Before ROBERTSON, P.J., and BROOM and COFER, JJ.
ROBERTSON, Presiding Justice, for the Court:
Appellant, Chester Jordan Johnston, Jr., was convicted in the Circuit Court of the First Judicial District of Hinds County of the rape of a 22-year-old woman on March 19, 1978. He was sentenced to 45 years imprisonment in an institution designated by the State Department of Corrections. Johnston assigns as error:
I. The failure of the State to preserve certain exculpatory evidence and perform blood tests on fluid samples was a denial of defendant's due process guaranteed by the 6th and 14th amendments.
II. The trial court erred in permitting testimony on the results of tests run on the rape package, when the prosecution failed to establish the chain of custody.
III. The rape shield statute denied the appellant his right to cross-examination and right to confrontation of the witnesses against him guaranteed by the 6th amendment of the Constitution.
Prosecutrix resided in one side of a duplex at 454 West Silas Brown Street in Jackson, and Johnston resided in the other side of the duplex, having recently moved in. At about 12:30 A.M. on March 19, 1978, prosecutrix was awakened by a loud knock on her door. She went to her locked front door and asked who was there, and Johnston identified himself. He told her that he had a flat tire and needed to borrow her phone, but prosecutrix refused to let him in.
Prosecutrix, while refusing to let Johnston in, offered to call someone for him. Johnston gave her the name of a friend, but upon looking in the telephone book she found seven listings for that name. Since Johnston could not remember the name of the street this friend lived on, he asked prosecutrix to let him in so he could look in the telephone book. Again she refused, replying that she was not dressed to admit him.
Johnston suggested that he return to his apartment, prosecutrix could put the phone book out on the porch, go back in her house and he would come out and check the number in the book. Prosecutrix, agreeing to this procedure, looked out the window to *1345 make sure Johnston was gone, then unlocked the door to place the phone book on the porch. When she opened the door, Johnston, who had apparently been hiding on the porch, grabbed her and forced his way into her apartment.
Johnston forced the prosecutrix into her bedroom, striking her several times with his hand, threatening to rape her, and threatening to kill her. Despite prosecutrix's efforts to talk with Johnston and her praying out loud, Johnston told her to shut up or he would kill her, and he stuck his thumb in her mouth. When she would not remove her clothes, he removed them and forcibly had sexual intercourse with her. He then made her dress and go with him into his apartment, where he put on his shoes and then left in his car.
The prosecutrix immediately went back to her apartment and called the police. She then called her minister who came over with his wife and accompanied her to the University Hospital. Dr. William Cleland, a resident in obstetrics and gynecology, examined her and found swelling and bruises about her head, face, neck and mouth. Dr. Cleland, following the hospital's standard procedure, did a wet prep smear and discovered numerous motile sperm, indicating recent intercourse. The sample of vaginal fluid and two cotton swabs used by Dr. Cleland for the smear were sealed in plastic tubes and delivered to the police.
Officer Dennis Froshour and his partner, Officer Johnson, picked up the rape pack at the University Hospital and delivered it to the Precinct 2 police station to be picked up by the property division of the Jackson Police Department and transferred to the crime lab. Officer Froshour also arrested the defendant at his place of employment on March 20th. The only test run on the rape pack by the police department was for determining the presence of sperm, and the test proved positive. Two pubic hairs and three head hairs found at the scene of the rape were compared to samples from defendant Johnston and found to be microscopically similar.
Johnston presented an alibi defense that he had been with his ex-wife at the time the alleged rape occurred. He testified that on the evening in question he arrived at his ex-wife's house at about 12:30 A.M., accompanied by his brother. He stated that he spent the rest of the night at his ex-wife's home in Pearl, returning to his apartment the next morning.

I.

WAS THE DEFENDANT DENIED DUE PROCESS BECAUSE OF THE STATE'S FAILURE TO PRESERVE CERTAIN EXCULPATORY EVIDENCE AND PERFORM BLOOD TESTS ON FLUID SAMPLES?
Johnston's motion for production of documents and tangible evidence was filed on April 14, 1978, almost a month after the date of the alleged rape. Among other things, Johnston asked the State to produce:
"11. Any exculpatory matter which in any way tends to absolve the Defendant of the crime with which he is charged which is in the possession or under the control of the State of Mississippi.
12. The results of any blood tests and blood type comparisons made by, for or on behalf of the State of Mississippi of the blood type of the Defendant, with any semen, skin scrapings or other matter taken from the body of the Prosecutrix."
The State, not having conducted any blood tests and blood type comparisons of the defendant's blood type with semen samples taken from the body of the prosecutrix, did not have any "results of any blood tests and blood type comparisons" to produce under the general request of the motion. Neither did it have "any exculpatory matter which in any way tends to absolve the Defendant of the crime," to produce in accordance with the calls of the motion.
Finally, on June 29, 1978, more than three months after the semen samples and vaginal fluid had been taken from the body of *1346 the prosecutrix, the defendant made a motion ore tenus that the contents of the rape package be delivered to him so that tests could be conducted. That same day the court ordered the state to produce these items. The samples proved to be no longer viable because the defendant had waited too long in requesting the State to produce them. Defendant's own witness, Dr. Warren Bell, director of laboratories and Chairman of the Department at the University Medical Center, testified that a reliable test can only be performed on such samples from one week to one month after they are taken, that determining the blood type from the semen samples, even if the tests are made between one week and one month after taking them, is about 80% reliable, and that when semen and vaginal fluid are mixed in the samples taken, the reliability is only about 50%.
The defendant's claim, that the rape package was potentially exculpatory evidence and should have been turned over to him on the basis of his general request, or that the tests on the semen samples to determine the blood type should have been performed by the City or State itself, is without merit. His reliance on United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), and Scott v. State, 359 So.2d 1355 (Miss. 1978), is misplaced. Agurs and Scott are clearly distinguishable on the facts and do not in any way support the defendant's contentions.
This Court, in Scott v. State, supra, said:
"In Agurs the Court stated, the mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish "materiality" in the constitutional sense.'" 359 So.2d at 1362.
As stated in both Agurs and Scott, "the mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish `materiality'" so as to require production on a general request.
It is argued by the defendant that the State did not refrigerate these samples and therefore destroyed them by this act of omission. The test to be made is whether the state acted in good faith and followed normal operating procedures. William Ates, the serologist for the Jackson Police Department for 14 years, was called as a witness by the defendant and testified that the standard and normal procedure was to preserve rape packages at room temperature and that this was done in this case.

II.

DID THE TRIAL COURT ERR IN PERMITTING TESTIMONY ON THE RESULTS OF TESTS RUN ON THE RAPE PACKAGE WHEN THE PROSECUTION HAD FAILED TO ESTABLISH A CHAIN OF CUSTODY?
There is no merit in this assignment of error. The testimony concerning the test results on the rape package was given by William Ates, who was called as a witness by the defense. In addition, the chain of custody was clearly established and no evidence was adduced showing any tampering with the rape package. Grady v. State, 274 So.2d 141 (Miss. 1973). A defendant on appeal may not complain of testimony elicited from his witness by his own counsel. Quick v. State, 309 So.2d 859 (Miss. 1975); Dorsey v. State, 243 So.2d 550 (Miss. 1971).

III.

DID THE RAPE SHIELD STATUTE [MISSISSIPPI CODE ANNOTATED SECTION 97-3-70 (1978 Supp.)], DENY THE APPELLANT HIS RIGHT TO CROSS-EXAMINATION AND RIGHT TO CONFRONTATION OF THE WITNESSES AGAINST HIM AS GUARANTEED BY THE 6th AMENDMENT?
The appellant was granted an in-chambers hearing to determine if testimony from the prosecutrix concerning her sexual conduct would be competent, relevant and material. Her testimony was positive and unequivocal that she had not had sexual intercourse with anyone during the month *1347 prior to March 19, 1978. The defendant produced no evidence to the contrary and any evidence of her sexual conduct a month before March 19, 1978, would be too remote and, therefore, incompetent, irrelevant and immaterial. The court was correct in excluding such evidence.
For these reasons, the conviction and sentence are affirmed.
AFFIRMED.
PATTERSON, C.J., SMITH, P.J., and SUGG, WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.