465 So.2d 1079 (1985)
Lester J. GOSS
v.
STATE of Mississippi.
No. 55495.
Supreme Court of Mississippi.
March 20, 1985.
Niles McNeel, Louisville, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Pat Flynn, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, P.J., and SULLIVAN and ANDERSON, JJ.
SULLIVAN, Justice, for the Court:
Lester Goss and four others were convicted of the rape of N.M.Y., under Mississippi Code Annotated § 97-3-65 (Supp. 1984). The jury failed to fix the penalty at life imprisonment and the trial court sentenced each defendant to five years imprisonment. This Court granted a motion to dismiss the appeal of the four other defendants on January 30, 1985. Goss maintains on appeal that the trial court erred in:
1. Excluding as irrelevant testimony alleging prior sexual conduct of the rape victim; and
2. In entering a verdict of not guilty because the jury's verdict was not supported by sufficient evidence.
There is no merit to either assignment of error, and the conviction and sentence of Lester Goss is affirmed.

FACTS
The prosecutrix, N.M.Y., is a twenty-three year old resident of New Zion community in Winston County, Mississippi. On January 28, 1983, she went to Gladney's Cafe with two female friends, around 9:00 p.m. After a short time, the prosecutrix, Linda Goss and Alvin Sherman, left Gladney's and drove in Sherman's automobile to a baseball diamond and parked the vehicle. Linda Goss got out of the car, leaving the prosecutrix and Alvin Sherman alone. According to the prosecutrix, she and Sherman waited in the car until Linda Goss returned with Chris Rash, and then they all went back to Gladney's. The prosecutrix denied that she had sexual relations with Sherman on that occasion and denied that they engaged in any amoratory activities. This incident occurred about one-half hour before the rape.
On returning to Gladney's, the prosecutrix saw Lester Goss, Anthony Hardin, Terry Lee Hunt, Dennis Perry, and Robert Lee Miller, in Gladney's. She had known all five of these men for several years.
The prosecutrix and Linda Ann Goss went to the restroom. They used the men's restroom because the ladies' restroom *1080 was out of order. As the prosecutrix and Linda Goss returned to the staircase leading up to the dance floor at Gladney's, the prosecutrix stopped to talk with Dennis Perry. Anthony Hardin grabbed her from behind, and, with the help of Terry Hunt and Robert Miller, carried her back into the men's bathroom. She was placed on her back on the floor and undressed and raped. Goss was the first of the group to rape her. Throughout the assault, the prosecutrix was fighting and yelling and resisting the five men. Eventually a crowd gathered, including the wife of the owner of Gladney's. The prosecutrix put her clothes back on and went upstairs to use the telephone. Lester Goss tried to stop her from calling the police, but she finally did call them and then went home. She was taken to Winston County Hospital, and given a pelvic examination and a rape test.

I.

DID THE TRIAL COURT ERR IN EXCLUDING EVIDENCE OF THE PRIOR SEXUAL CONDUCT OF THE PROSECUTRIX?
Lester Goss moved the court to allow evidence of the sexual conduct of the prosecutrix at trial under the so-called rape shield statute, Mississippi Code Annotated § 97-3-70 (Supp. 1984). The offer of proof consisted of affidavits by Charles Goss, the appellant's cousin, and by Jerry Hunt, brother of the defendant Terry Hunt. The court heard evidence on the motion on October 24, 1983.
The prosecutrix admitted at this hearing that she had had voluntary sexual relations two or three times with Charles Goss four weeks prior to the rape. She denied having sexual relations with Jerry Hunt a month prior to the rape. She said that she and Charles Goss had been going together five or six years.
Jerry Hunt stated that he had sexual relations with the prosecutrix on several occasions, including one time four weeks prior to the rape.
Based upon this testimony, Goss moved the court to allow the testimony of Charles Goss and Jerry Hunt, on the theory that it was relevant as to whether or not the prosecutrix was promiscuous and whether or not there was consent on the night of the rape. Goss contended that since the alleged incidents occurred within 30 days of the alleged rape they were sufficiently close in time as to be admissible.
The district attorney argued that the evidence of sexual activity with third parties was not relevant when what was charged was in essence a gang rape. The trial court overruled the defendant's motion on the ground that the testimony had no connection with the crime charged, being with different persons from any of the defendants and not being a part of any immediate antecedent events.
Immediately prior to trial, Goss filed a second motion to introduce evidence of sexual conduct of the complaining witness. A hearing was held on this motion in which the prosecutrix was questioned about the incident at the baseball diamond.
Goss argued that he should be able to question the witness regarding this "opportunity" for sexual relations to rebut the state's proof about the presence of semen. If, Goss argued, the prosecutrix had had sexual relations earlier that night, that could account for the semen. Although the court questioned whether the statute went to "opportunity" and noted that there was no proof of any sexual conduct at that time, the trial court ruled that Goss would be permitted to question the witness.
In 1977, the Mississippi Legislature enacted a rape shield statute. Mississippi Code Annotated § 97-3-70 (Supp. 1984). Prior to enactment of this statute, specific incidents of sexual conduct on the part of the complaining witness was admissible on the issue of consent. Shay v. State, 229 Miss. 186, 90 So.2d 209 (1956). Mississippi's rape shield law provides, with some exceptions, that evidence of specific incidents of the complaining witness's sexual conduct is not admissible by the defendant in order to prove consent by the complaining *1081 witness. § 97-3-70(1). One exception to this prohibition is if the evidence of sexual conduct is:
... determined by the court after an offer of proof by the accused outside the hearing of the jury, in closed chambers, and a statement by the court of its findings of fact essential to its determination, to be relevant and admissible in the interests of justice.
§ 97-3-70(5). Goss followed the proper procedure for bringing such a motion as set forth in § 97-3-68 (Supp. 1984).
The trial court's ruling on this issue is set forth below:
The court finds these statutes to have been enacted for the purpose of shielding rape victims or claimants from a long series of recitations of previous sexual intercourse not related to the charge before the court, as tending to try her or to decide it on other facts and to deny her the right to decide with whom she will have intercourse. Johnston v. State [376 So.2d 1343 (Miss. 1979)], has some kind of a limitation of thirty days. However, the court recognizes from reading from the citation and argument of counsel that that limitation was simply one that fit the case, and the court finds that the Supreme Court did not intend to establish that as any ironclad rule.
The question is whether or not the incidents to be related would have such a connection with the crime charged as to be relevant on the issue for the jury to decide as to whether or not intercourse at the time of the alleged crime was in fact involuntary. Only one of the affiants testified, and his testimony was to the effect that he had his intercourse with the complaining witness many times and that the last time prior to the alleged crime, which is the basis of this suit, was early in the month when the alleged crime is alleged to have taken place on or about the 28th day of the month, but more importantly the court finds that the related intercourse has no connection with the crime charged, being with a different person from any of these defendants, not being a part of the "res gestae" or its immediate antecedent events, and the court finds that this testimony to be offered, and which is the purpose of this hearing, to be the kind of evidence or kind of situation in which the rape shield statutes are intended to apply to, and the motion is overruled.
The court rules this evidence to be inadmissible as to both offers. The court rules the evidence to be irrelevant and inadmissible as to both offers.
The sole case interpreting the rape shield statute is Johnston v. State, 376 So.2d 1343 (Miss. 1979). The prosecutrix in Johnston stated positively that she had not had sexual intercourse during the month prior to the rape and the defendant produced no evidence to the contrary. The court ruled that any evidence of her sexual conduct over a month before the rape would be too remote and, therefore, incompetent, irrelevant and immaterial. This Court affirmed the trial court's exclusion of such evidence. Id. at 1346-47.
The case sub judice involves allegations of sexual conduct within a month prior to the rape. The prosecutrix admitted to having had sexual intercourse with Charles Goss, the appellant's distant cousin, whom she had been seeing for five or six years. She denied having had sexual intercourse with Jerry Hunt, brother of another defendant.
Appellant interprets Johnston v. State, supra, to render per se admissible any evidence of sexual conduct within 30 days of the date of the rape. Goss argues that the interests of justice in this case require the introduction of such evidence. Since, prior to the rape, the prosecutrix knew and was on good terms with all of the defendants, Goss also argues that her close contact with some of the defendants subsequent to the rape further supports the need for introducing evidence of prior sexual conduct.
The state argues that the trial judge correctly found that whether or not a young woman had had voluntary relationships with her boy friend, or possibly with *1082 a second person, had no logical relationship to her being gang raped by five men several weeks later. Johnston v. State does not set forth an arbitrary 30-day rule, and the trial court correctly excluded the evidence. The fact that the prosecutrix voluntarily had sexual relations with her boy friend, Charles Goss, and even that she might possibly have had sex with Jerry Hunt, has little probative value on the issue of consent in the assault in question; that is, these two incidents do not tend to make more probable or less probable that the sexual relations in the bathroom of Gladney's were consensual.
This assignment of error is without merit.

II.

WAS THE JURY'S VERDICT AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?
The thrust of this assignment is the argument of Goss that the verdict was improper because the prosecutrix's actions after the alleged rape were not only inconsistent with the charge but make the charge highly improbable. The prosecutrix admitted that a few weeks after the incident she rode back from Attala County to her home in New Zion in the same car with Lester Goss and others. She explained that she did this because she had no other way to go home and did not know that Goss was going to be in the car with her. Two months before trial, she voluntarily stopped and gave a ride to another defendant, Robert Miller. She admitted that she had been in an automobile with Miller about three times since he allegedly raped her.
Witnesses for Goss testified that the prosecutrix was seen dancing with various defendants a few weeks after the alleged rape. Jolene Goss, a cousin of Lester Goss, testified that a year prior to the rape she had seen Lester Goss and the prosecutrix make love in the back of a car while she was on a double date with defendant Terry Hunt. Jolene Goss said that the prosecutrix voluntarily sat next to Goss on the ride from Attala County back to New Zion. She also claimed that she had seen the prosecutrix dancing with both Goss and Miller on more than one occasion since the alleged rape. Gwendolyn Wraggs, a third cousin of Goss, testified that she had seen the prosecutrix dancing with Goss and Miller and "hugging up" to both of them at Big Boy's Cafe some weeks after the alleged incident. Sherry and Linda Goss, both cousins of Goss, also said that the prosecutrix had danced with both Goss and Miller after the alleged rape.
Goss relies on McQueen v. State, 423 So.2d 800 (Miss. 1982), where this Court reversed a charge of rape on the insufficiency of the evidence. However, in McQueen, no weapon was exhibited and no force was used to remove the prosecutrix's clothes and lay her down. Because we found that the evidence fell far short of showing that the prosecutrix in McQueen had submitted because of a reasonable apprehension that she would suffer injury if she refused, we reversed McQueen's conviction and he was discharged. Id. at 803. That is not the case here.
The victim's testimony alone is sufficient, although not corroborated, where it is consistent with the circumstances. Christian v. State, 456 So.2d 729, 734 (Miss. 1984); Davis v. State, 406 So.2d 795 (Miss. 1981). In this case, the testimony of the prosecutrix was corroborated and entirely consistent with the testimony offered by the other state's witnesses. We are not unmindful of the deference that we must give to a jury's determination of the credibility of witnesses and the weight and worth of their testimony. Davis v. State, 320 So.2d 789 (Miss. 1975); Hill v. State, 199 Miss. 254, 24 So.2d 737 (1946). The jury was free to accept or reject the testimony of the defendant's witnesses, indicating that the prosecutrix remained on friendly, even intimate, terms with the defendants following the rape. Woodward v. State, 180 Miss. 571, 178 So. 469 (1938).
This incident occurred in a sparsely populated rural community, where recurring *1083 contact, desired or not, with the members of the community is probably inevitable. An admission by the prosecutrix that she rode home with the defendant, and gave a ride to another defendant in the weeks following the rape does not strongly evidence her consent to the sexual incident in question. These were matters for determination by the jury and the jury has spoken.
This assignment of error is without merit as the evidence was ample to support the conviction of Lester Goss.
AFFIRMED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, PRATHER, ROBERTSON and ALEXANDER, JJ., concur.