506 So.2d 254 (1987)
Bruce Allen BOCHES
v.
STATE of Mississippi.
No. 56327.
Supreme Court of Mississippi.
February 18, 1987.
As Modified on Denial of Rehearing April 29, 1987.
*256 Orma R. Smith, Jr., Smith, Ross & Trapp, Corinth, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by DeWitt Allred, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before HAWKINS, P.J., and ROBERTSON and SULLIVAN, JJ.
SULLIVAN, Justice, for the Court:
Bruce Allen Boches was convicted of felony possession of more than one (1) kilogram of marijuana with intent to sell, transfer, and distribute the same. He was sentenced to serve twelve (12) years in the Mississippi Department of Corrections and fined $30,000.00. Boches appeals to this Court assigning eleven errors.
On July 13, 1982, the Mississippi Highway Patrol in conjunction with the Alcorn County Sheriff's Department set up a roadblock outside Corinth, Mississippi, in Alcorn County to check tags, inspection stickers and drivers licenses. About 7:30 that evening two cars approached the roadblock but pulled over in a driveway before reaching the check point. Within minutes both cars pulled out and a white Pontiac driven by Boches headed in the direction from whence it came, away from the roadblock.
Highway Patrolman Hubert McDaniel left the roadblock in order to investigate the white Pontiac. He stopped the Pontiac and noted that it had a valid Mississippi substitute license plate and a valid inspection sticker. Boches produced a valid Tennessee driver's license but could not produce any ownership papers. McDaniel testified that he determined to investigate whether or not the Pontiac was stolen and also, he detected a strong odor of unburned marijuana inside the car. As a part of his duties as a patrolman McDaniel was taught to recognize the smell of marijuana but admitted that a person not familiar with such smell or one who had not smelled the substance before probably would not recognize it. McDaniel then placed Boches in his patrol car and drove him to the roadblock to pick up Officer Harold Holder.
Holder was carried to pick up the Pontiac and return it to the roadblock. He testified that once he got in the automobile he detected a strong odor that appeared to be raw marijuana. He also said the car steered sensitively as if it were weighted down in the back. According to Holder, when he returned the Pontiac to the roadblock Boches consented to a search of the interior of the vehicle in an effort to locate the ownership papers. No ownership papers *257 were found but an airplane ticket to Miami from Memphis was found. Holder then drove the Pontiac to the Alcorn County Jail and the investigation was turned over to Charlie Goforth.
Boches related an entirely different version of this incident. He testified that when they arrived at the roadblock he told the officers that the ownership papers might be in the glove compartment but he never consented to a search of the vehicle. He further said the officers opened the trunk of the vehicle while they were at the roadblock but all the officers present at the scene denied that they opened the trunk at that location. Charlie Goforth, Jr. testified that once the automobile arrived at the jail a search warrant was secured and three large bales of marijuana were found in the trunk. Goforth testified that these bags were partially opened and that he smelled the odor before and after he opened the trunk.
Boches testified that his roommate, Donnie Wayne Floyd, called him from Miami and offered to pay him $300.00 to drive a sick friend's car back to Memphis. Boches then flew to Miami and Floyd took him directly to the automobile. The two men convoyed back to Memphis stopping only for gas and food. Boches claimed that he knew nothing about the contents of the trunk and he did not smell anything peculiar on the trip. Boches also said their car did not steer funny or feel unusually sensitive.
Boches testified that as they approached the roadblock, Floyd motioned for Boches to pull over and told him that the registration and title were not in the car and therefore Boches should find an alternative route around Corinth. Boches did not question Floyd about this and added that he did not know then nor did he know at the time of the trial who owned the vehicle.

I.

WAS IT ERROR TO DENY A MISTRIAL WHEN THE PROSECUTOR QUESTIONED BOCHES CONCERNING OTHER CRIMINAL CHARGES?
The defendant took the stand and during the course of direct-examination by his own attorney was questioned as follows:
Q. Mr. Boches, have you ever been a dealer or seller of marijuana?
A. No.
Q. Have you ever been convicted of any crime involving drugs of any kind?
A. No, sir.
Q. Ever been convicted of any crime whatsoever?
A. No, sir.
On cross-examination the prosecutor questioned the defendant and objection was made and sustained as follows:
Q. You testified on direct examination that you have never been convicted of any drug violation. You are not suggesting to us, are you, Mr. Boches, that you have never been involved with drugs, are you?
A. Never been involved?
Q. Yes, sir.
A. How do you mean?
Q. Well, sir, you tell me. Are you suggesting to this jury that you had no prior involvement in drug traffic?
BY MR. SMITH: We object to the form of the question. Whether or not he's participated in drug traffic, convicted for it or whatever it is. I think he's entitled to know what involved means. Does it mean he's smoked a joint or does it mean that he's been convicted of a violation?
BY JUDGE GARDNER: All right, counsel.
BY THE WITNESS: I will answer the question, if counsel wants me to.
BY JUDGE GARDNER: All right.
BY MR. BOWEN: (continuing)
Q. Have you ever been charged with a drug violation?
BY MR. SMITH: We object.
BY JUDGE GARDNER: Sustained.
BY MR. BOWEN: Your Honor, I have nothing further of this witness.
BY JUDGE GARDNER: Redirect?
BY MR. SMITH: We would like to move for a mistrial on the basis of that question *258 which counsel knew was very improper.
BY JUDGE GARDNER: We will take it up in a moment.
Following re-direct examination of the defendant, the trial judge admonished the jury as follows:
BY JUDGE GARDNER: All right, you may step down. Ladies and gentlemen of the jury, a few moments ago a question was asked by the Assistant District Attorney, the defense objected to that question, I have  I sustained the objection at that time, which did not require that the witness answer that question. I instruct you at this time that you are to disregard the question itself. All right?
The jury was excused and the motion for mistrial was argued, and the trial judge denied the motion. At the close of all the evidence, the defense renewed the motion for mistrial, and the trial judge ruled as follows:
BY JUDGE GARDNER: All right, counsel, the Court is of the opinion that it should be denied also. At the time it occurred, I sustained the Defendant's objection to that and Defendant then proceeded to cross examine or to redirect and I then, at the first opportunity, I advised the jury that I had sustained the objection and that they were not to infer from the question itself anything whatsoever, to disregard it. Furthermore, as I recall, the examination conducted by defense counsel of the Defendant himself the questions elicited by counsel or the questions themselves and the answers elicited from the Defendant were of such nature that you came awfully close to opening up this whole avenue. For that reason, I would not allow the State to go in because I don't hink it's proper, but I do not feel there has been anything or that that is any cause for a mistrial in this case.
Although the defendant on direct examination opened this area to the district attorney on cross examination, still the question posed by the district attorney was improper. The court properly sustained defendant's objection to the question, which is a proper exercise of the trial court's discretion to control the extent of cross examination. Shanklin v. State, 290 So.2d 625, 627 (Miss. 1974).
The trial judge then admonished the jury to disregard the question. The jury may be presumed to have heeded the trial court's admonishment, Williams v. State, 427 So.2d 100, 103 (Miss. 1983), and unless egregious circumstances or bad faith of the prosecutor is present, a mistrial should not be entered. "Each case must be decided on its own peculiar facts." Henderson v. State, 403 So.2d 139, 140 (Miss. 1981).
In Smith v. State, 457 So.2d 327, 334 (Miss. 1984), we reaffirmed that a witness or defendant may not be asked about a crime for which he was charged, but not convicted. But this is not reversible error if the trial judge properly instructed the jury to disregard the question. Smith, 457 So.2d at 334. As the record clearly reflects, the trial judge acted properly in this record. See Smith, 457 So.2d at 334; see also, Johnson v. State, 475 So.2d 1136, 1142 (Miss. 1985); Barnette v. State, 481 So.2d 788, 790 (Miss. 1985).
On this record defendant was clearly not entitled to a mistrial and there is no merit to this assignment of error.

II.

WAS IT ERROR TO REFUSE A DIRECTED VERDICT AND/OR TO REFUSE TO GIVE A CIRCUMSTANTIAL EVIDENCE INSTRUCTION WITH REGARD TO THE CONSTRUCTIVE POSSESSION OF THE MARIJUANA?

1.

CONSTRUCTIVE POSSESSION
Boches takes the position that under Burnham v. State, 467 So.2d 946 (Miss. 1985), there exists insufficient evidence to establish that he was in constructive possession of the marijuana in the car. He points out that he:
1. Did not own the vehicle;
2. Was the sole occupant of the vehicle;
3. No marijuana was found on his person or in the passenger compartment;
*259 4. Was not aware of the presence of the contraband in the vehicle.
Boches contends that these facts show that the prosecution failed to establish that he had dominion and control over the contraband or that he was aware of its presence and intentionally and consciously in possession of the contraband.
Under the authority of Curry v. State, 249 So.2d 414 (Miss. 1971), the State contends that there was sufficient evidence produced to allow the jury to determine that Boches was aware of the presence and character of the contraband and he intentionally and consciously possessed it. The factors tending to show this are:
1. Boches had exclusive possession and control of the automobile (dominion and control);
2. The length of the trip (over 8 hours) and the distance travelled (over 1000 miles);
3. Testimony by the officers that they smelled marijuana (denied by Boches);
4. Sensitive steering testified to by Officer Holder (denied by Boches).
Additional incriminating factors were offered into evidence which the prosecution contends supports the jury's decision:
1. Boches flew to Miami on short notice, immediately drove back and made no stops along the way;
2. Boches' lack of knowledge as to the owner of the vehicle;
3. Boches' failure to inquire about where he was going or who owned the vehicle;
4. Boches' actions after encountering the roadblock. From these factors the State contends that a jury could reasonably conclude the Boches was either in actual or constructive possession of the marijuana.
This is not a case where the presumption of constructive possession arises based on the ownership of the automobile because Boches was not the owner. Hamburg v. State, 248 So.2d 430, 432 (Miss. 1971). Additionally, there is no evidence that Boches had marijuana on his person or within his reach or sight. Curry v. State, 249 So.2d 414 (Miss. 1971). The facts are more akin to Hudson v. State, 362 So.2d 645 (Miss. 1978), where this Court held that the State failed to prove constructive possession where the defendants were not the owners of the vehicle in which the marijuana was found and the State failed to show additional incriminating circumstances to justify a finding of constructive possession. We cited the following passage from Curry, supra, as what proof is required in constructive possession cases:
... there must be sufficient facts to warrant a finding that defendant was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it. It need not be actual physical possession. Constructive possession may be shown by establishing that the drug involved was subjected to his dominion or control. Proximity is usually an essential element, but by itself is not adequate in the absence of other incriminating circumstances.
Curry, 249 So.2d at 416, and cited in Hudson, 362 So.2d at 646.
Also in Hudson we noted that the State must prove dominion and control over the contraband and not simply the automobile in order to satisfy the Curry test. Hudson, 362 So.2d at 647.
We are of the opinion that the instant case is readily distinguishable from Hudson. Boches did exercise complete dominion and control over the car from the time he arrived in Miami until he encountered the roadblock, a much greater time period than that in Hudson. Also, the quantity of marijuana in this case exceeds that in Hudson (130 kilograms compared to 52.5 kilograms) and the contraband was not "hidden" in a secret compartment under the hood as it was in Hudson but rather here was located in the trunk of the car. While there was no marijuana on Boches' person or in the passenger compartment, numerous other incriminating factors were introduced into evidence. Under this assignment we must accept as true all the testimony offered on behalf of the State together with all the reasonable inferences drawn therefrom. See Burnham v. State, 467 So.2d 946, 947 (Miss. 1985). Under this standard we cannot say the trial court erred when it denied Boches' motions for a *260 directed verdict and refused to grant a peremptory instruction at the close of the case in chief.

2.

CIRCUMSTANTIAL EVIDENCE INSTRUCTION
Boches argues under this assignment that if he constructively possessed the marijuana, the proof of that possession was purely by circumstantial evidence and he should have been granted a circumstantial evidence instruction. See Henderson v. State, 453 So.2d 708 (Miss. 1984). Our most recent case setting forth the standard as to the necessity of granting a circumstantial evidence instruction is contained in Keys v. State, 478 So.2d 266 (Miss. 1985), where we said:
A correct statement is that the instruction must be given only where the prosecution is without a confession and wholly without eye witnesses to the gravamen of the offense charged.
Keys, 478 So.2d at 267.
See also, Bunkley v. State, 495 So.2d 1 (Miss. 1986) (affirming Keys); Dodson v. State, 494 So.2d 575 (Miss. 1986) (same); Mack v. State, 481 So.2d 793 (Miss. 1985) (same). True no confession exists in this case but the prosecution is not wholly without eyewitnesses to the gravamen of the offense charged. Testimony of the officers concerning bales of marijuana found in the automobile is direct evidence of the offense. Therefore, it was not necessary that a circumstantial evidence instruction be granted as to this element.

III.

SHOULD BOCHES HAVE BEEN GRANTED A DIRECTED VERDICT OR A CIRCUMSTANTIAL EVIDENCE INSTRUCTION ON THE QUESTION OF THE CHARGE OF INTENT TO SELL, TRANSFER OR DISTRIBUTE MARIJUANA?
Boches asserts that the mere quantity of marijuana seized was insufficient proof of his intent to sell, transfer or distribute the contraband, absent other evidence of drug paraphernelia commonly associated with drug trafficking. Bryant v. State, 427 So.2d 131 (Miss. 1983). We cannot help but note that 348 pounds of marijuana is far more than a reasonable person would buy for personal consumption. Under the authority of Williams v. State, 445 So.2d 798 (Miss. 1984), we conclude that where intent alone is sought to be proved by circumstantial evidence, no instruction on circumstantial evidence is necessary. See also, 23A C.J.S. Criminal Law, § 1250 (1961).
Proof of felonious intent is always by circumstantial evidence unless the accused confesses. Hollingsworth v. State, 392 So.2d 515, 517-18 (Miss. 1981). The question posed by this appeal is whether mere quantity alone is sufficient proof that the accused possessed the requisite intent necessary to support a conviction of intent to transfer, distribute or sell. In Bryant, supra, we held that it was not. In succeeding cases we have looked for additional incriminating evidence indicating some type of involvement in drug trade. Coyne v. State, 484 So.2d 1018, 1022 (Miss. 1986); Breckenridge v. State, 472 So.2d 373, 375 (Miss. 1985).
In Keys however, we held that possession of a large quantity of a controlled substance which by size was far more than a person might reasonably hold for exclusive personal use, sufficiently established an intent to sell. We are of the opinion that the Keys reasoning is sound and that possession of 348 pounds of marijuana sufficiently establishes that Boches intended to sell, transfer or distribute the marijuana. We further hold that constructive possession of a quantity of marijuana of this size sufficient to establish intent to sell also constitutes direct evidence so that a circumstantial instruction is not required. There is no merit to this assignment of error.

IV.

WAS IT ERROR TO FAIL TO REDUCE THE CHARGE TO MERE POSSESSION AS THERE WAS NO PROOF THAT THE CONTEMPLATED SALE WAS TO TAKE PLACE IN ALCORN COUNTY?
Boches argues that venue is improper because the State failed to offer proof *261 that the contraband was to be delivered or sold in Alcorn County. State v. Fabian, 263 So.2d 773 (Miss. 1972), stands for the proposition that venue in criminal cases must be proved beyond a reasonable doubt and the State has offered no proof beyond a reasonable doubt that any sale or transfer was contemplated in Alcorn County so says Boches. The most obvious response to that argument is that Boches possessed the contraband in Alcorn County and therefore venue was proper. The gist of the crime is possession and the prosecution is not required to prove a specific place where the accused intends to sell or transfer the contraband. See §§ 99-11-15 and 99-11-17, Miss. Code Ann. (1972).
The argument urged by Boches would prevent the prosecution from ever charging an individual of possession with intent to deliver, transfer, or distribute narcotics, unless proof was offered that the accused was to deliver the contraband to a specific county. Such a statutory construction would lead to absurd results. See Fairchild v. State, 459 So.2d 793, 799 (Miss. 1984).
Sections 99-11-15 and 99-11-17, Miss. Code Ann. (1972), while not directly applicable to the case at hand clearly show the intent of the legislature to allow Mississippi Courts to prosecute criminal acts that occur in Mississippi but which did not begin or were not intended to end in Mississippi. We find this assignment of error to be without merit.

V.

WAS IT ERROR TO FAIL TO GRANT A NEW TRIAL WHEN THE PROSECUTION'S WITNESSES FAILED TO COOPERATE WITH THE DEFENSE COUNSEL PRIOR TO TRIAL?
Defense counsel attempted to interview each of the officers at the roadblock prior to trial but each refused. Boches now contends that the trial judge should have granted a new trial because Boches had no way to know what their testimony would be thus he was subjected to unfair surprise. Under the authority of United States v. Clingan, 400 F.2d 849 (5th Cir.1968), Boches now asks this Court to adopt a rule which would force all witnesses for the State to submit to interviews and disclose their testimony prior to trial if they work for the State.
However, a trial court cannot force any witness to confer with the defendant prior to trial. Blair v. State, 445 So.2d 1373, 1374-75 (Miss. 1984); Gallion v. State, 396 So.2d 621, 624 (Miss. 1981). A defendant is free to confer with or interview witnesses, either on his own or by subpoena, but the witness also retains the right to refuse to discuss his testimony with the defendant. Scott v. State, 359 So.2d 1355, 1360 (Miss. 1978). There is no evidence here that the State instructed the witnesses to refuse to talk to defense counsel or that the State impeded the defense efforts in any way in interviewing the State's witnesses. We specifically decline to adopt the rule suggested by Boches and we find no merit to this assignment.

VI.

WAS IT ERROR TO REFUSE TO GRANT A NEW TRIAL BECAUSE OF THE PRESENCE OF UNIFORMED PATROLMEN IN THE COURTROOM DURING FINAL ARGUMENT?
At the close of the case defense counsel had called each highway patrolman during the trial as a witness. At the end of their testimony these highway patrolmen remained seated in the courtroom together. Prior to closing argument defense counsel objected and asked the trial judge remove them from the courtroom. This objection was overruled. The trial judge is obligated to maintain order in the courtroom and prevent and suppress any disturbance which might prejudice the rights of the accused. Dean v. State, 173 Miss. 254, 160 So. 584, 588 (1933). In this instance the trial judge found that the highway patrolmen did not create a disturbance in the courtroom and that the atmosphere was not saturated with bias, hatred, or prejudice against the defendant and therefore *262 his decision to allow the officers to remain in the courtroom does not constitute reversible error. See Seals v. State, 208 Miss. 236, 44 So.2d 61 (1949).
The polestar consideration in affording a defendant a fair trial is that no one be punished for a crime without "a charge fairly made and fairly tried in a public tribunal free of prejudice, passion, excitement, and trinical power." Sheppard v. Maxwell, 384 U.S. 333, 350, 86 S.Ct. 1507, 1516, 16 L.Ed.2d 600, 613 (1966). The right to a fair trial includes the right to a verdict based on the evidence and not extraneous prejudicial happenings in and around the courtroom. Fuselier v. State, 468 So.2d 45, 53 (Miss. 1985). We find nothing in this record to even intimate that the officers who remained in the courtroom created a disturbance or any type of uproar. The cases cited by Boches all involve situations where the spectators made loud comments or other gestures while the witnesses were on the stand. There is absolutely no evidence of any such occurrence in this particular case. There is no merit to this assignment.

VII.

WAS IT ERROR TO ALLOW THE REBUTTAL TESTIMONY OF SHERIFF COLEMAN IN VIOLATION OF RULE 4.06?
Sheriff Edwin Coleman testified in rebuttal that while in custody Boches initially denied knowing Donnie Wayne Floyd and later admitted knowing Floyd only after he was told that Floyd had been arrested. After Boches was sentenced his attorney filed a bill of exceptions stating that he had objected at trial because the State failed to produce a summary of the alleged oral statements pursuant to a discovery order but that the court reporter failed to record this objection because it was made at a bench conference. Citing Tolbert v. State, 441 So.2d 1374 (Miss. 1983), Boches now argues that the State's failure to disclose these oral statements mandates a reversal.
We note that at the time Boches was tried oral statements were not within the scope of discovery under the prevailing law of the State. See Lee v. State, 383 So.2d 821 (Miss. 1980). In Franklin v. State, 460 So.2d 104 (Miss. 1984), this Court held that oral statements are discoverable but further asserted that Franklin should not be construed to require the State to disclose every word spoken by an accused while in custody. Recent decisions by this Court clearly hold that oral statements are subject to discovery under Rule 4.06. Franklin v. State, 460 So.2d 104, 106 (Miss. 1984). Furthermore, Rule 4.06 does not distinguish between statements offered either in the state's case in chief or statements reserved for rebuttal. Johnson v. State, 491 So.2d 834, 837 (Miss. 1986), affirming Tolbert v. State, 441 So.2d 1374, 1375 (Miss. 1983). The trial judge, at a subsequent hearing on a motion for a new trial, recognized that the issue was whether oral statements were covered by Rule 4.06. Defense counsel however, candidly admitted that the statements were not incriminating, but instead went to Boches' credibility. On cross-examination, Coleman admitted that prior to denying knowing Floyd, Boches had told the sheriff that he did not wish to get anyone else involved in the case. These statements clearly do not reflect on Boches' guilt or innocence, but undoubtedly reflect on his credibility in front of the jury.
In Buckhalter v. State, 480 So.2d 1128 (Miss. 1985), we held that the failure of the State to disclose an oral statement by a defendant which was neither an admission of guilt nor inconsistent with his asserted defense was not reversible error even though there was a violation of Rule 4.06 because the record as a whole did not indicate a miscarriage of justice. Buckhalter, 480 So.2d at 1129; see also, Miss.Sup.Ct. Rule 11. We apply the rule in Franklin retroactively which would have clearly made the oral statement discoverable. We also apply Buckhalter retroactively and find that the statements were not inconsistent and the record as a whole does not indicate a miscarriage of justice in this case. There is no merit to this assignment of error.

*263 VIII.

WAS IT ERROR TO FAIL TO GRANT A MISTRIAL WHEN THE PROSECUTION FAILED TO PRODUCE THE SEIZED AIRLINE TICKET?
Prior to trial, the prosecution informed defense counsel that the airline ticket was lost and that they would be unable to produce it at trial. Apparently, the parties agreed to some stipulation about the contents although the record is unclear on this point. At trial prosecution's witness verified finding the ticket but could not detail its contents. Boches testified that he purchased a ticket on Delta Airlines and flew directly to Miami and met Floyd. At Floyd's subsequent trial, Boches testified on behalf of the State and the ticket was introduced at that trial. In a subsequent motion for a new trial, Boches alleged that the failure to produce the ticket at his trial warranted granting him a new trial because the ticket contained exculpatory evidence. This motion was denied by the trial court.
Exculpatory evidence in the possession of the prosecution must be turned over to the accused in a criminal proceeding. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). However, every non-disclosure or non-production case cannot be treated as error since the prosecution is under no duty to turn over his entire file to the defense. Scott v. State, 359 So.2d 1355, 1361 (Miss. 1978). To determine whether the non-disclosure or non-production requires reversal, this Court must decide whether the "omitted evidence creates a reasonable doubt [as to the accused's guilt] that did not otherwise exist." If the omitted evidence, when considered in light of the entire record creates a reasonable doubt as to his guilt, the evidence must be produced. But if there is no reasonable doubt about the accused's guilt, a new trial is not warranted. Scott v. State, 359 So.2d at 1361, 1362 (quoting United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). "The mere possibility that an item might have helped the defense, or might have affected the outcome of the trial, does not establish materiality in the constitutional sense." Johnston v. State, 376 So.2d 1343, 1346 (Miss. 1978) (citing Agurs and Scott as authority); see also, Scruggs v. State, 412 So.2d 732, 740 (Miss. 1982). We conclude that it was not error to deny Boches' motion for a new trial. It is unclear what if any, exculpatory evidence was contained in the ticket. It simply listed Boches flight and that Boches purchased the ticket under his real name. This information was presented to the jury through Boches own testimony. When viewed in light of the entire record the ticket does not create a reasonable doubt as to Boches' guilt or innocence. If, in fact, the evidence was exculpatory the jury was apprised of that evidence and could have considered it in their determination. This assignment has no merit.

IX.

WAS IT ERROR TO FAIL TO SUPPRESS THE MARIJUANA SEIZED FROM THE VEHICLE DRIVEN BY BOCHES?
Boches argues that once he produced a valid driver's license and proved that the car had a valid inspection sticker and tag, the officers could no longer lawfully detain him and that any incidental search conducted was thereby illegal. Morgan v. Town of Heidelberg, 246 Miss. 481, 150 So.2d 512 (Miss. 1963); Simmons v. State, 301 So.2d 565 (Miss. 1974). The State responds citing Moss v. State, 411 So.2d 90, 95 (Miss. 1982), and Green v. State, 348 So.2d 428 (Miss. 1977), and argues that Boches' evasion of the roadblock and the strong smell of marijuana emanating from the car justified the detention of Boches.
First we must note there is conflicting testimony concerning any search that may or may not have taken place at the roadblock. Officers at the scene denied the search and Boches claims that the trunk in fact was searched at the roadblock. The issue however as framed is whether or not the officers were justified in detaining Boches at all after he showed them a valid *264 drivers license, valid inspection sticker, and a valid tag.
The initial stop of Boches was both warranted and legal. When a motorist evades a police roadblock we have recognized that police may stop them and check the validity of their license tag, and inspection sticker. See Morgan v. Town of Heidelberg, supra. Such investigative stops of vehicles are clearly covered by the Fourth Amendment. See United States v. Sharpe, 470 U.S. 675, 105 S.Ct. 1568, 1573, 84 L.Ed.2d 605 (1985). An investigative stop must be limited in scope. "Where a detention ... exceeds the scope of an investigative stop, it approaches a seizure." McCray v. State, 486 So.2d 1247, 1250 (Miss. 1986); see also, Floyd v. State, 500 So.2d 989 (Miss. 1986) (citing McCray and discussing investigatory stops). The United States Supreme Court recently noted that in evaluating the reasonableness of such investigatory stops, the appropriate inquiry is "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." United States v. Sharpe, 105 S.Ct. at 1573 (quoting Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
The action of the officers in this case meets the test set forth in Sharpe. The initial stop was justified and the officers asked Boches to produce his drivers license. Boches produced a valid drivers license and the car had a valid tag and valid inspection sticker. However, Boches was also asked to produce the ownership papers of the vehicle which Boches could not do and he could not identify the owner of the car. Under such circumstances, it is reasonable that the officers would be able to detain Boches and the vehicle until they determined whether or not the automobile was stolen. The officers further testified that when Boches opened the window they smelled marijuana emanating from the car. We have held that probable cause may be established through the sense of smell. See Hall v. State, 455 So.2d 1303, 1304-05 (Miss. 1984). Once the officers established probable cause to believe that the vehicle was carrying contraband, then it was reasonable to detain the vehicle for a longer period of time. Smell can be the basis for probable cause therefore, it appears that the officers could also search the vehicle. See United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); Jackson v. State, 440 So.2d 307, 309 (Miss. 1983); Roby v. State, 419 So.2d 1036, 1038 (Miss. 1982).
We therefore hold that the detention of the vehicle was both warranted and justified. The search of the interior was justified because the officers had probable cause to believe that the vehicle was carrying contraband. There is no question that once the search warrant was obtained at the Alcorn County Jail the officers had full authority to search the trunk. This assignment is also without merit.
We therefore find that the conviction and sentence of Bruce Allen Boches should be and is hereby affirmed.
CONVICTION OF POSSESSION OF MARIJUANA WITH INTENT TO SELL, TRANSFER AND DISTRIBUTE AND SENTENCE OF TWELVE (12) YEARS AND $30,000.00 FINE AFFIRMED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and DAN M. LEE, PRATHER, ROBERTSON, ANDERSON and GRIFFIN, JJ., concur.