746 So.2d 940 (1999)
Jose A. GUERRERO, Appellant,
v.
STATE of Mississippi, Appellee.
No. 97-KA-00387 COA.
Court of Appeals of Mississippi.
March 9, 1999.
Rehearing Denied June 29, 1999.
Certiorari Denied October 14, 1999.
William B. Sullivan, Laurel, Attorney for Appellant.
Office of the Attorney General by Deirdre McCrory, Attorney for Appellee.
BEFORE THOMAS, P.J., DIAZ, AND SOUTHWICK, JJ.
THOMAS, P.J., for the Court:
¶ 1. Jose Guerrero was convicted of possession of more than a kilogram of marijuana and sentenced to twenty years with five years suspended and was ordered to pay a fine of $30,000 with $20,000 suspended. On appeal, Guerrero assigns the following issues, listed verbatim, as error:
I. IS DRIVING AFTER MIDNIGHT WHILE MEXICAN PROBABLE CAUSE TO STOP A VEHICLE?
II. IF THE ABOVE IS AFFIRMATIVE, DOES FAILURE TO HAVE A VALID DRIVERS LICENSE JUSTIFY CALLING AHEAD TO ANOTHER JURISDICTION TO BE ON THE LOOK OUT FOR THE VEHICLE?
III. IS OUR STATUTE ON CARELESS DRIVING TOO VAGUE?
IV. DOES STOPPING THE SUBJECT VEHICLE IN THE ALERTED JURISDICTION JUSTIFY DETAINING THE DRIVER UNTIL A CANINE UNIT ARRIVES?
*941 V. IF NO CONTROLLED SUBSTANCE IS NOT FOUND NEAR THE RIGHT FRONT TIRE OF THE SUBJECT VEHICLE WHERE THE "DOPE DOG" WAS SAID TO HAVE "ALERTED", JUSTIFY TAKING THE VEHICLE APART?
VI. IS A CONTROLLED SUBSTANCE LOCATED IN ONE OF THE GAS TANKS OF THE SUBJECT VEHICLE TO BE IMPUTED TO GUERRERO WHO DID NOT OWN THE VEHICLE?
VII. HOW MUCH PERSONAL FREEDOM ARE WE WILLING TO LOSE TO THE MILITARY ARM OF OUR CITIES IN QUEST OF PROTECTION?
VIII. THE LOWER COURT ERRED IN FAILING TO SUPPRESS THE EVIDENCE OBTAINED BY SEARCH OF THE SUBJECT VEHICLE.
IX. THE LOWER COURT ERRED IN FAILING TO DIRECT A VERDICT OF ACQUITTAL.
Finding no error, we affirm.

FACTS
¶ 2. During the early morning hours of June 18, 1995, Jose Guerrero was pulled over for a traffic violation. Acting on a tip received from the Smith County Sheriff's Department via radio dispatch, Officers Doug Hill and Kevin Flynn of the Laurel Police Department set up surveillance near the Laurel city limits. The dispatch advised Hill and Flynn that a white Ford pickup truck with Florida license plates was headed south on Highway 15 to Jones County and that the vehicle had been previously stopped by a Smith County deputy sheriff. The dispatch also advised that the vehicle appeared suspicious and was possibly carrying contraband.
¶ 3. As Guerrero entered the Laurel city limits, Officers Hill and Flynn pulled in behind Guerrero and followed him for approximately two miles, during which time Guerrero broke the center line two to three times. Officers Hill and Flynn stopped the vehicle and asked the driver, Guerrero, for his driver's license. Guerrero stated that he did not have a driver's license and produced a Texas identification card which indicated Guerrero was seventeen years of age. Guerrero was then placed under arrest for driving without a driver's license. When asked his point of origin and destination, Guerrero responded that he was traveling from Houston, Texas to Florida. Guerrero also stated that the vehicle belonged to his brother and that he had borrowed the truck for the weekend, but that his brother did not know where he was going in the vehicle.
¶ 4. Officer Hill testified that given the fact that Guerrero was traveling the "back roads" instead of the interstate and that Guerrero had few items of clothing with him, a K-Nine unit was called to the scene to conduct a scan of the vehicle for drugs. K-Nine Officer Ken Williams arrived a short time later with his K-Nine partner Bycal, a five-year-old German Shepard. As Officer Williams and Bycal were conducting their scan of the vehicle, Bycal indicated the presence of drugs near the right front wheel area of the vehicle. However, a preliminary search of the vehicle failed to produce any drugs.
¶ 5. A wrecker was called to remove the vehicle from the scene. Officer Roy Watson, the shift commander that night, arrived and examined the vehicle. Officer Watson observed that the vehicle had duel fuel tanks. Further examination by Officer Watson revealed discrepancies in the fuel gauge as the tow truck raised and lowered the vehicle, which indicated to Officer Watson the presence of an obstruction in the fuel tank which was interfering with the fuel gauge reading. The vehicle was towed and impounded in an enclosed building until the following morning. Since Guerrero was a juvenile, he was placed in detention until members of his family could arrive.
¶ 6. A subsequent inspection the following morning by Officer Randy Dearman *942 and C.D. Farris, a City of Laurel mechanic, revealed that the bolts securing the bed of the truck showed signs of tampering. Further inspection revealed that an object or objects were in the fuel tanks. Farris and Officer Dearman removed the fuel tanks and discovered several sealed PVC pipes within the fuel tanks. Sealed within the PVC pipes was approximately 55 pounds of marijuana.

ANALYSIS
¶ 7. We must note from the outset that Guerrero has presented a barrage of issues, nine all totaled, in a shotgun brief to this Court for review. Of the nine assignments, previously listed verbatim, only two issues are properly before this Court. Guerrero has advanced convoluted arguments and cites no legal authority to support seven of his nine assignments. We have held "that it is the duty of an appellant to provide authority and support of an assignment." Hoops v. State, 681 So.2d 521, 526 (Miss.1996); see also Kelly v. State, 553 So.2d 517, 521 (Miss.1989); Brown v. State, 534 So.2d 1019, 1023 (Miss. 1988); Harris v. State, 386 So.2d 393 (Miss.1980). Further, "if a party does not provide this support this Court is under no duty to consider assignments of error when no authority is cited." Hoops, 681 So.2d at 526; see also Kelly, 553 So.2d at 521; Brown, 534 So.2d at 1023.
¶ 8. We will address only the issues properly presented before this Court; first, the issue of whether Guerrero was in constructive possession of the marijuana and second, the issue of whether Officers Hill and Flynn had probable cause to make the initial stop of Guerrero. We now turn to the issues properly presented to this Court.

I.

THE LOWER COURT ERRED IN FAILING TO SUPPRESS THE EVIDENCE OBTAINED BY SEARCH OF THE SUBJECT VEHICLE
¶ 9. Guerrero challenges the trial court's ruling admitting the evidence obtained by the search of the vehicle he was driving the night in question. Guerrero argues that he was stopped without probable cause and that the only reason he was stopped was due to a radio dispatch received from the Smith County Sheriff's Office advising the Laurel Police Department of Guerrero's presence and the possibility he was carrying contraband without any reasonable foundation to support the dispatch. Guerrero likewise, without expressly stating so, argues that the evidence seized as a result of the initial stop is inadmissible as fruit of the poisonous tree. Guerrero cites Boches v. State, 506 So.2d 254 (Miss.1987) in support of his argument.
¶ 10. The initial stop of Boches was prompted by Boches's attempted evasion of an investigatory roadblock. The question put forth in Boches was whether such an evasion warranted probable cause to pursue and stop the evading driver. The Boches court noted that "when a motorist evades a police roadblock ... [the] police may stop them and check the validity of their license, tag, and inspection sticker." Boches, 506 So.2d at 264. The court further discussed the issue of the resulting detention of Boches by citing to United States v. Sharpe, 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985). In Sharpe, the United States Supreme Court held that in evaluating the reasonableness of investigatory stops, the appropriate inquiry is "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." Sharpe, 470 U.S. at 682, 105 S.Ct. 1568 (quoting Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).
¶ 11. A distinction is readily apparent between the case sub judice and the circumstances in Boches. Guerrero's initial stop was the result of a traffic violation and not that of an investigatory stop as *943 was at issue in Boches. Therefore, we are not persuaded that Boches is the correct avenue with which to evaluate the issue of whether probable cause existed in the initial stop of Guerrero. However, as we will discuss in Guerrero's second assignment of error, Boches is applicable to the issue of whether Guerrero was in constructive possession of marijuana discovered within the vehicle's fuel tanks. We turn now to Whren v. United States, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) to resolve this issue.
¶ 12. In Whren, plainclothes policemen, patrolling a "high crime area" in an unmarked police car, observed a Nissan Pathfinder truck with temporary license plates and youthful occupants waiting at a stop sign for an unusually long period of time. As the officers executed a u-turn to investigate the suspicious activity, the Pathfinder turned suddenly to the right without signaling, and sped off at an "unreasonable" rate of speed. The officers soon overtook the Pathfinder at a later traffic light. When the officers approached the vehicle they immediately observed two large plastic bags with what appeared to be crack cocaine.
¶ 13. Whren accepted that the officer had probable cause to believe that various provisions of the traffic code had been violated. However, Whren argued unsuccessfully that "in the unique context of civil traffic regulations" probable cause is not enough. Whren, 517 U.S. at 810, 116 S.Ct. 1769. Guerrero similarly argues that probable cause was nonexistent in his initial stop by the Laurel Police Department. Specifically, Guerrero states in his brief that Mississippi's careless driving statute, Miss.Code Ann. § 63-3-1213 (Rev.1996), "is too vague to have any clear meaning and the statute should be stricken." We similarly are unpersuaded by this argument.
¶ 14. The Court in Whren stated that "[a]s a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." Whren, 517 U.S. at 810, 116 S.Ct. 1769. It is readily apparent from the record that as Guerrero was driving through the Laurel city limits, Officers Hill and Flynn "observed the truck [Guerrero] cross over into the turning lane two to three times over the yellow line" before pulling back into his lane each time. Despite the dispatch concerning Guerrero's previous stop in Smith County and his suspicious nature as implied in the dispatch, Guerrero committed a traffic violation in the presence of Officers Hill and Flynn, thereby justifying their initial stop of Guerrero. This assignment of error is without merit.

II.

THE LOWER COURT ERRED IN FAILING TO DIRECT A VERDICT OF ACQUITTAL
¶ 15. Guerrero argues that his conviction was against the overwhelming weight of the evidence. Guerrero argues that the State failed to prove he had either dominion and control or additional incriminating circumstances connecting him with the contraband and that, for this reason, the jury's verdict was against the overwhelming weight of the evidence.
¶ 16. Our standard of review is well settled. In determining whether the jury's verdict is against the overwhelming weight of the evidence, we are bound to consider "all of the evidence in the light [most] consistent with the verdict and give the State all favorable inferences which may be drawn from the evidence." Strong v. State, 600 So.2d 199, 204 (Miss.1992) (citing Corley v. State, 584 So.2d 769, 773 (Miss.1991)); see also Jackson v. State, 580 So.2d 1217, 1219 (Miss.1991).
¶ 17. The theory of constructive possession has been explained, in Curry v. State, 249 So.2d 414, 416 (Miss.1971), as follows:
[T]here must be sufficient facts to warrant a finding that defendant was aware of the presence and character of the *944 particular substance and was intentionally and consciously in possession of it. It need not be actual physical possession. Constructive possession may be shown by establishing that the drug involved was subject due to his dominion or control. Proximity is usually an essential element, but by itself is not adequate in the absence of other incriminating circumstances.
¶ 18. The theory was further defined in Hamburg v. State, 248 So.2d 430, 432 (Miss.1971), that "one who is the owner in possession of the premises ... is presumed to be in constructive possession of the articles found in or on the property possessed." This presumption is rebuttable, however, and does not relieve the State of its burden to prove guilt beyond a reasonable doubt. Id. Thus, "[w]here the premises upon which contraband is found is not in the exclusive possession of the accused, the accused is entitled to acquittal, absent some competent evidence connecting him with the contraband." Powell v. State, 355 So.2d 1378, 1379 (Miss.1978). See also Keys v. State, 478 So.2d 266, 268 (Miss.1985).
¶ 19. In support of his assignment, Guerrero argues that his circumstances are properly correlative of the holdings in Ferrell v. State, 649 So.2d 831 (Miss.1995) and Fultz v. State, 573 So.2d 689 (Miss. 1990). Ferrell was stopped for speeding and was asked to produce a driver's license. Ferrell admitted that his license was suspended and was arrested for speeding and driving with a suspended license. The officer returned to the vehicle Ferrell was operating to retrieve the car keys and discovered a suspicious yellow pill next to two match boxes. A search of the match boxes revealed nine rocks of crack cocaine in one of the boxes. Ferrell stated that he was unaware of the crack cocaine and that he had only borrowed the car.
¶ 20. In Ferrell, the Mississippi Supreme Court quoted from Cunningham v. State, 583 So.2d 960, 961 (Miss.1991), another case where the court overturned a conviction of possession where cocaine was found on the floor of the vehicle.
A presumption of constructive possession arises against the owner of premises upon which contraband is found. Hamburg v. State, 248 So.2d 430, 432 (Miss.1971); Pool v. State, 483 So.2d 331, 336-37 (Miss.1986). However, when contraband is found on premises which are not owned by a defendant, mere physical proximity to the contraband does not, in itself, show constructive possession. As we stated in Fultz v. State, 573 So.2d 689, 690 (Miss.1990), "the state must show additional incriminating circumstances to justify a finding of constructive possession."
Ferrell, 649 So.2d at 834.
¶ 21. The court in Ferrell rejected the State's argument that the location of the matchbox next to the driver's seat and the fifteen hours which Ferrell had possession of the car amounted to additional incriminating circumstances.
¶ 22. In Fultz v. State, 573 So.2d 689 (Miss.1990), the Mississippi Supreme Court similarly reversed a conviction based on constructive possession and held that the evidence was insufficient to establish that Fultz constructively possessed marijuana found in the trunk of the vehicle he was driving. Fultz was stopped for driving erratically and subsequently failed three field sobriety tests. He was arrested and taken into custody. The vehicle was owned by Fultz's sister. While conducting an inventory search, seven and a half ounces of marijuana were discovered in a duffel bag located in the trunk of the car. Fultz was convicted of possession with intent to distribute.
¶ 23. In reversing Fultz's conviction, the court noted that absent additional competent evidence, the only additional incriminating circumstance was that Fultz had a small amount of marijuana on his person at the time of his arrest. The court held that "this factor, standing alone, is insufficient *945 to prove any connection between the contraband and this defendant." Id. at 691.
¶ 24. Guerrero's argument that both Ferrell and Fultz contain applicable similarities to his present situation and, therefore, warrants reversal, fails upon a review of the facts and holding in Boches v. State, 506 So.2d 254 (Miss.1987). We are persuaded by the facts and holding in Boches in reviewing Guerrero's circumstances as compared to those found in Ferrell and Fultz.
¶ 25. Boches was traveling from Miami, Florida to Memphis, Tennessee in a white Pontiac when he attempted to avoid a roadblock. This action aroused the suspicion Highway Patrolman McDaniel. Officer McDaniel stopped the white Pontiac driven and occupied solely by Boches. During the stop, Officer McDaniel smelled a strong odor of marijuana coming from the vehicle. A subsequent search of the vehicle resulted in the discovery of 348 pounds of marijuana in the trunk of the vehicle. Boches was convicted of felony possession of more than one kilogram of marijuana with intent to distribute.
¶ 26. At trial, Boches testified that his roommate called him and offered him $300 to fly to Miami and drive a sick friend's car back to Memphis. Boches and his roommate, Donnie Floyd, were traveling in convoy from Miami to Memphis in separate vehicles. When the two men approached the roadblock near Corinth, Mississippi, Boches testified that Floyd flagged him to stop and informed him that the registration and title were not in the vehicle driven by Boches and that the two should find an alternative route around the roadblock. Boches denied any knowledge of the marijuana and further denied noticing any smell of marijuana or that the car was heavy in the rear.
¶ 27. In upholding the conviction in Boches, the Mississippi Supreme Court noted the additional incriminating factors were offered into evidence against Boches to support finding him in constructive possession. The State offered the following factors tending to show additional incriminating circumstances and constructive possession:
1. Boches had exclusive possession and control of the automobile (dominion and control);
2. The length of the trip (over 8 hours) and the distance [traveled] (over 1000 miles);
3. Testimony by the officers that they smelled marijuana (denied by Boches);
4. Sensitive steering testified to by Officer Holder (denied by Boches).
Additional incriminating factors were offered into evidence which the prosecution contends supports the jury's decision:
1. Boches flew to Miami on short notice, immediately drove back and made no stops along the way;
2. Boches' lack of knowledge as to the owner of the vehicle;
3. Boches' failure to inquire about where he was going or who owned the vehicle;
4. Boches' actions after encountering the roadblock. From these factors the State contends that a jury could reasonably conclude the Boches was either in actual or constructive possession of the marijuana.
Boches, 506 So.2d at 259.
¶ 28. In the instant case, Guerrero's circumstances, while not identical to those in Boches, are similar. They are listed as follows:
1. Guerrero had exclusive possession and control of the automobile (dominion and control);
2. The length of the trip (over 6 hours) and the distance traveled (over 450 miles);[1]

*946 3. The scarce amount of clothing Guerrero had with him (Guerrero stated he was going to Florida for the weekend);
4. Guerrero's deviation from the I-10 Interstate system, the quickest route between Houston, Texas and Florida. (Guerrero was using the back roads in rural Mississippi instead of the Interstate);
5. The lack of explanation by Guerrero as to the scarce amount of clothing with him and his route; and
6. Guerrero's statement that he had filled both tanks up prior to leaving Houston and had just switched to the other tank, despite the fact that both fuel tanks contained numerous sealed PVC containers filled with 55 pounds of marijuana which would have greatly limited the vehicles's fuel capacity and economy (miles per gallon).
¶ 29. Under these circumstances, Guerrero has failed to show error in the trial court's ruling. In reviewing the record and the evidence presented at trial we must consider "all of the evidence in the light [most] consistent with the verdict and give the State all favorable inferences which may be drawn from the evidence." Strong, 600 So.2d at 204 (citing Corley v. State, 584 So.2d 769, 773 (Miss.1991)); see also Jackson v. State, 580 So.2d 1217, 1219 (Miss.1991). Therefore, we cannot say that the trial court erred in denying Guerrero's motion to direct a verdict of acquittal as against the overwhelming weight of the evidence. This assignment is without merit.
¶ 30. THE JUDGMENT OF THE CIRCUIT COURT OF JONES COUNTY OF CONVICTION OF POSSESSION OF MORE THAN ONE KILOGRAM OF MARIJUANA AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH FIVE YEARS SUSPENDED LEAVING FIFTEEN YEARS TO SERVE AND A FINE OF $30,000 WITH $20,000 BEING SUSPENDED LEAVING A BALANCE OF $10,000 FINE IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JONES COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, DIAZ, IRVING, LEE, AND PAYNE, JJ., CONCUR.
COLEMAN, J., DISSENTS WITH SEPARATE WRITTEN OPINION.
COLEMAN, J., dissenting:
¶ 31. With utmost deference to my colleagues in the majority, I respectfully dissent because in my opinion, while Officers Doug Hill and Kevin Flynn had cause to stop Guerrero because he "broke the center line two to three times," Guerrero's "traveling the `back roads' instead of the interstate" and having "few items of clothing with him," without more, was not probable cause to detain him solely to allow a "K-Nine unit" to be "called to the scene to conduct a scan of the vehicle for drugs." (majority opinion p. 941). In Rooks v. State, 529 So.2d 546, 555 (Miss.1988), the Mississippi Supreme Court provided the following explanation of "probable cause":
[Probable cause] is not what some officer thought, it is not some conduct that was simply unusual, not some conduct which simply roused the suspicion that illegal activity could be afoot when there was at the same time just as likely a possibility that nothing at all illegal was transpiring. Rather, it must be information reasonably leading an officer to believe that then and there contraband or evidence material to a criminal investigation would be found.
I respectfully submit that Guerrero's "traveling the `back roads' instead of the interstate" and having "few items of clothing with him" was at best "some conduct that was simply unusual" and/or "some *947 conduct which simply roused the suspicion that illegal activity could be afoot." Because I view these factors as insufficient probable cause to search the truck Guerrero was driving, I would reverse the trial court's admitting the evidence obtained by the search of the truck that Guerrero was driving that night, the consequence of which necessitates the dismissal of the charge of possession of more than one kilogram of marijuana for which the grand jury had indicted Guerrero.
¶ 32. The majority does not base the search of the truck as being incidental to Guerrero's arrest for driving without a driver's license. Even if the search were incident who Guerrero's arrest, the United States Supreme Court has permitted only "a full search of the passenger compartment, including any containers therein, pursuant to a custodial arrest." Knowles v. Iowa, 525 U.S. 113, ___, 119 S.Ct. 484, 488, 142 L.Ed.2d 492 (1998) (citing New York v. Belton, 453 U.S. 454, 460, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981)).
NOTES
[1] We note that the record is silent as to Guerrero's final destination in Florida and have figured the approximate time and distance from Houston, Texas to Laurel, Mississippi.